IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KATHRYN KUBAS, | ) | CASE NO. 1:22-CV-00856-CEH |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| v. | ) | |
| | ) | |
| COMMISIONER OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | **MEMORANDUM ORDER AND OPINION** |
| | ) | |
| Defendant, | ) | |

I. **Introduction**

Plaintiff, Kathryn Kubas ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Period of Disability ("POD") and Disability Insurance Benefits ("DIB"). This matter is before the Court by consent of the parties under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (ECF No. 6). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding.

II. **Procedural History**

Claimant filed applications for POD and DIB on July 31, 2020, alleging a disability onset date of May 21, 2016. (ECF No. 8, PageID #: 42). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On July 21, 2021, an ALJ held a telephonic hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). The ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 39). The ALJ's decision became final on April 16, 2022, when the Appeals Council declined further review. (*Id.* at PageID #: 27).

1

Claimant filed her complaint to challenge the Commissioner's final decision in the U.S. District Court for the Northern District of Ohio on May 24, 2022. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 11). Claimant asserts the following assignments of error:

> (1) Whether the ALJ failed to properly recognize and evaluate the opinions of Shane Strnad, APRN, a treating, acceptable medical source.
>
> (2) Whether the ALJ's residual functional capacity assessment and determination that Ms. Kubas can perform other work is in error given the failure to recognize limitations caused by her obsessive compulsive disorder.

(ECF No. 10, PageID #: 645).

## III. Background

### A. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> On December 8, 2015, the claimant was taking Fluoxetine (Prozac) and Sertraline (Zoloft) prescribed by her primary care physician (8F/20-22).
>
> On February 5, 2018, the claimant saw Suzana Sarac-Leanard, MD, for routine follow up and medication refills. The claimant was a caregiver for her elderly parents and she reported a history of depression. The claimant had seen a psychiatrist 10 years ago and was placed on Prozac and Zoloft. The claimant was still taking Prozac and Zoloft for depression. Dr. Sarac-Leanard refilled the claimant's Prozac and told the claimant that taking two SSRIs was off label/not standard. She recommended a psychiatry consult update (8F/16-19).
>
> On May 21, 2018, the claimant sought outpatient mental health services at Psychological & Behavioral Consultants with a chief complaint of depression and anxiety. The claimant reported that she was diagnosed with depression and obsessive-compulsive disorder when she was in Middle School. The claimant was still taking care of her parents and she was stressed financially due to being unemployed, but she reported that it did not cause her much anxiety and might be for the best so that she could take care of her parents.

On examination, the claimant's eye contact was appropriate; her attitude/behavior was agitated, cooperative, fidgety, irritable, indifferent, and restless; her speech was normal and coherent, but loud; her mood was irritable and neutral; her thought process/thought content contained hopelessness; her memory was fair; her insight was fair; and her judgment was fair. Shane Strnad, NP, diagnosed the claimant with major depressive disorder and generalized anxiety disorder. Mr. Strnad increased the claimant's Zoloft and continued Prozac (3F/7-14).

On June 21, 2018, the claimant returned to see Mr. Strnad. Since the claimant's last visit, her Prozac was stopped and Gabapentin was added. The claimant reported that she was worsening and had increasing caregiver burden as her father had fallen off a step ladder and could not walk without a walker. The claimant also noted that her friends "had an intervention for me over not working and withdrawing more." On examination, the claimant's eye contact was appropriate; her attitude/behavior was distracted and fidgety; her speech was normal and coherent; her mood was anxious and depressed; her thought process/thought content contained hopelessness, depressive thoughts, and low self-esteem; her insight was fair; and her judgment was fair. Mr. Strnad continued Zoloft, stopped Gabapentin, and started Bupropion (3F/16-20).

On November 28, 2018, the claimant saw Mr. Strnad. The claimant reported reduced depressive and anxiety symptoms and stability in overall functioning. The claimant was socializing more, she had applied for some reception positions, and she was considering applying for work at Starbucks. On examination, the claimant was neatly and appropriately dressed/groomed; her motor activity was within normal limits; her speech was coherent and normal; her thought process was organized and within normal limits; her memory was intact; her attention was within normal limits; her mood was anxious; her insight was good; and her judgment was good. Mr. Strnad continued the claimant's Bupropion and Zoloft (3F/25-27).

On May 31, 2019, the claimant saw Mr. Strnad. The claimant reported only mild/residual depressive and anxiety symptoms and stability in overall functioning despite continued stressors as her parents continued to struggle with their physical health and she helped them to manage their needs. On examination, the claimant was neatly and appropriately dressed/groomed; her motor activity was within normal limits; her speech was coherent and normal; her thought process was organized and within normal limits; her memory was intact; her attention was within normal limits; her

3

mood was anxious; her insight was good; and her judgment was good. Mr. Strnad continued the claimant's Bupropion and Zoloft (3F/31-33).

On December 4, 2019, the claimant saw Mr. Strnad. The claimant reported stability in overall functioning, but that stressors continued as her parents health continued to decline. On examination, the claimant was neatly and appropriately dressed/groomed; her motor activity was within normal limits; her speech was coherent and normal; her thought process was organized and within normal limits; her memory was intact; her attention was within normal limits; her mood was anxious; her insight was good; and her judgment was good. Mr. Strnad continued Zoloft, reduced Bupropion, increased Abilify, and he referred the claimant to therapy with Alice Palmer (3F/43-46).

On February 18, 2020, the claimant told Mr. Strnad that she was more stressed. Mr. Strnad continued the claimant's medications and told the claimant to continue therapy with Ms. Parker (7F/31-34).

On April 3, 2020, the claimant had a video appointment with Mr. Strnad due to the COVID-19 crisis. The claimant reported increased worry with pandemic concerns and elderly parents. She felt burden and guilt about being the one that had to go out. She had obsessive thoughts regarding contamination and increased hand washing over 20 times per day. On examination, the claimant was neatly and appropriately dressed/groomed; her motor activity was within normal limits; her speech was coherent and normal; her thought process was organized and within normal limits; her memory was intact; her attention was within normal limits; her mood was anxious; her insight was good; and her judgment was good. Mr. Strnad continued the claimant's Zoloft, Bupropion, and Abilify (7F/35-38).

On May 13, 2020, the claimant told Mr. Strnad that she had increased anxiety with having to do all the shopping and day-to-day essential needs for her household. Mr. Strnad stopped the claimant's Zoloft and restarted Prozac for depression and anxiety (7F/39-42).

On November 20, 2020, the claimant had a video appointment with Mr. Strnad. The claimant had continued depression, anxiety, obsessions, and compulsions, but had stability in overall functioning. On examination, the claimant was neatly and appropriately dressed/groomed; her motor activity was within normal limits; her speech was coherent and normal; her thought process was organized and within normal limits; her memory was

> intact; her attention was within normal limits; her mood was anxious; her insight was good; and her judgment was good. Mr. Strnad continued the claimant's Bupropion, Prozac, and Mirtazapine (7F/75-80).
>
> On May 6, 2021, the claimant had a video appointment with Ms. Strnad. The claimant reported that her mother broke her tibia and was in rehabilitation again. She further reported that her father's mental health and physical health were declining and she helped her father a lot. The claimant said that she was scheduled to get her second COVID-19 vaccine that week and was planning to get together with friends in two weeks and said, "I see need to see them!" On examination, the claimant was appropriately dressed/groomed; her speech was coherent and normal; her thought process was logical, goal directed, and organized; her memory was intact; her attention was intact; her mood was anxious and depressed; her insight was good; and her judgment was not impaired. Mr. Strnad continued the claimant's Lamotrigine, and Prozac (12F/12-16).

(ECF No. 8, PageID #: 47–49).

### B. Opinion Evidence at Issue

The opinion of Mr. Shane Strnad, A.P.R.N., is at issue in this case. (*See* ECF No. 10, PageID #: 645). The ALJ summarized Mr. Strnad's opinion in her decision:

> The claimant had continued depression, anxiety, obsessions, and compulsions, but had stability in overall functioning. On examination, the claimant was neatly and appropriately dressed/groomed; her motor activity was within normal limits; her speech was coherent and normal; her thought process was organized and within normal limits; her memory was intact; her attention was within normal limits; her mood was anxious; her insight was good; and her judgment was good. Mr. Strnad continued the claimant's Bupropion, Prozac, and Mirtazapine (7F/75-80).

(ECF No. 8, PageID #: 49). Mr. Strnad also authored another opinion on June 24, 2021. His notes stated that Claimant "is currently unable to work and even needs some guidance on managing ADLs. She has Chronic depressive, anxiety and obsessive-compulsive disorder [s]ymptoms that have only partially responded to meds and therapy. He[r] prognosis is guarded." (*Id.* at PageID #: 642).

5

**IV. The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

> 1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2021.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 21, 2016, through her date last insured of March 31, 2021 (20 CFR 404.1571 et seq.).
>
> 3. Through the date last insured, the claimant had the following severe impairments: depression, anxiety disorder, and obsessive-compulsive disorder (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant was limited to performing simple tasks and following simple instructions; no strict production quotas; no requirement for complex work-related decisions so no negotiation, no arbitration, no supervisory responsibilities, and no requirement of maintaining the safety or welfare of others; few if any workplace changes; could communicate with others, but no physical contact required for the job; and conversations could be superficial and brief.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on February 15, 1972, and was 49 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled,"

>whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
>
>11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 21, 2016, the alleged onset date, through March 31, 2021, the date last insured (20 CFR 404.1520(g)).

(*Id.* at PageID #: 44, 46, 52–53).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to DIB: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC") and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Claimant raises two issues on appeal. First, Claimant argues the ALJ did not adequately review two opinions Mr. Strnad authored. (ECF No. 10, PageID #: 655). Second, she contends that substantial evidence does not support the RFC or the ALJ's finding that a substantial number of jobs exist in the national economy that Claimant may work. (*Id.*). The Court addresses each argument in the following sections.

**1. Opinions**

Claimant challenges the ALJ's treatment of two opinions from Mr. Strnad, dated November 20, 2020 and June 24, 2021. (*Id.* at PageID #: 656–59). The Court will review each claim in turn.

8

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. § 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. § 404.1520c(a). In doing so, the ALJ is required to explain how they considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. § 404.1520c(b)(2).

Medical source opinions are evaluated using the factors listed in § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." §§ 404.1520c(c), 404.1520c(b)(2) ("The factors of supportability and consistency are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

    a. **November 20, 2020 opinion**

Claimant first argues that the ALJ "failed to utilize the appropriate standards" in their review of Mr. Strnad's November 20, 2020 medical observations. (*Id.* at PageID #: 656). She says the ALJ's rejection of the observations as neither valuable nor persuasive is not the adequate standard for evaluating the medical opinion. (*Id.*). Claimant specifically argues that the ALJ failed to provide the required analysis of supportability and consistency as well as utilization of several

9

§ 404.1520c(c) factors when reviewing the opinion. (*Id.* at PageID #: 657). While Claimant recognizes that Mr. Strnad's statement that Claimant was "unable to work" was an invalid determination of disability, she still asserts the ALJ is required to provide consideration of the rest of the opinion. (*See id.*).

The Commissioner argues that the ALJ was not required to discuss the § 404.1520c(c) factors since Mr. Strnad's conclusory opinion was a disability determination reserved for the Commissioner. (ECF No. 11, PageID #: 676 (citing *Zingale v. Kijakazi*, No. 1:20-cv-02197, 2022 WL 824148, at *14 (N.D. Ohio Mar. 18, 2022))). Therefore, the Commissioner argues, "the ALJ properly declined to articulate his consideration of Mr. Strnad's conclusory statements," in accordance with § 404.1520b(c). (*Id.*).

The ALJ reviewed the opinion and noted:

> The claimant had continued depression, anxiety, obsessions, and compulsions, but had stability in overall functioning. On examination, the claimant was neatly and appropriately dressed/groomed; her motor activity was within normal limits; her speech was coherent and normal; her thought process was organized and within normal limits; her memory was intact; her attention was within normal limits; her mood was anxious; her insight was good; and her judgment was good. Mr. Strnad continued the claimant's Bupropion, Prozac, and Mirtazapine (7F/75-80).

(ECF No. 8, PageID #: 49). Additionally, the record stated, "patient is unable to work at this time and given the duration and severity of her symptoms I believe with a reasonable degree of medical certainty that she is unable to get gainful employment." (*Id.* at PageID #: 523).

The ALJ rejected this opinion for the following reasons:

> The undersigned did not provide articulation about the evidence at Exhibit 7F/79 (the claimant "is unable to work at this time and given the duration and severity of her symptoms I believe with a reasonable degree of medical certainty that she is unable to get gainful employment," per Mr. Strnad on November 20, 2020) or

10

> elsewhere that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c).

(ECF No. 8, PageID #: 51).

The ALJ did not use the supportability and consistency factors to evaluate Mr. Strnad's medical observations. However, this was unnecessary as Mr. Strnad stated that Claimant was unable to work, a disability determination reserved for the Commissioner. *See* § 404.1520b(c)(3)(i); *Zingale*, 2022 WL 824148 at *14 ("The pertinent regulations provide that the ALJ is not required to offer 'any analysis' when it comes to issues reserved to the Commissioner, such as whether a person is disabled or not able to work."). This point is undisputed among the parties. (*See* ECF No. 10, PageID #: 657; ECF No. 11, PageID #: 676). Thus, the ALJ was not required to analyze or review the supportability and consistency of the opinion.

Claimant nevertheless argues that the ALJ should have considered the rest of the November 2020 record. (*See* ECF No. 10, PageID #: 657–58). However, Mr. Strnad's notes only contain brief mentions of Claimant's symptoms and conditions, failing to identify any additional functional limitations. (ECF No. 8, PageID #: 519–24). For example, his noted assessment was "[continued] depression and anxiety, [continued] obsessions" with diagnoses of "mixed obsessional thoughts and acts," "generalized anxiety disorder," and "maj[or] depressive [disorder.]" (*Id.* at PageID #: 522, 524). Because these are not functional limitations, the ALJ was not required to review them under § 404.1520c. *See* § 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions."); *Andrews v. Comm'r of Soc. Sec.*, No. 5:20-cv-1512, 2021 WL 3375538, at *20 (N.D. Ohio July 14, 2021) ("Because Dr. Dallara's evaluation didn't set forth functional limitations, it was not an opinion that was subject to 20 C.F.R. § 416.920(c)."); *see also Goode v. Comm'r of Soc. Sec.*, No. 1:20-CV-02240-JDG, 2021 WL

11

5919939, at *18 (N.D. Ohio Dec. 15, 2021) (finding that an expert's diagnosis of "severe cervical canal stenosis from C2-3 to C5-6" and noting that the claimant had "signs and symptoms of cervical myelopathy" did not constitute medical opinions under Social Security Administration regulations). Accordingly, the ALJ did not err in failing to provide additional analysis of Mr. Strnad's November 20, 2020 examination notes.

### b. June 24, 2021 opinion

Mr. Strnad also authored exam notes on June 24, 2021 that the ALJ did not review. (*See* ECF No. 8, PageID #: 639–43). Claimant argues that by failing to consider the June 2021 opinion, the ALJ failed to consider all of the evidence in the record. (ECF No. 10, PageID #: 658). More specifically, Claimant argues that because the ALJ's analysis never mentions the opinion, it is unknown if the ALJ evaluated her opinion or ignored it altogether. (*Id.*). While Claimant recognizes the opinion was issued after the period at issue, she argues that it "may be probative of her condition prior to the expiration of her insured status." (*Id.*). Therefore, Claimant argues the ALJ's failure to mention the June 2021 evidence leaves this Court to speculate how the ALJ might have weighed the evidence. (*Id.* at PageID #: 658–59).

In response, the Commissioner claims the ALJ properly disregarded the June 2021 opinion because it came after the date last insured, and Claimant failed to show how it relates back to the relevant period. (ECF No. 11, PageID #: 676–77). The Commissioner also notes that the record related to issues reserved for the Commissioner and identifies no additional functional limitations. (*Id.* at PageID #: 677–78).

Mr. Strnad's June 2021 notes state that Claimant "is currently unable to work and even needs some guidance on managing ADLs. She has Chronic depressive, anxiety and obsessive-

12

compulsive disorder [s]ymptoms that have only partially responded to meds and therapy. He[r] prognosis is guarded." (ECF No. 8, PageID #: 642).

For an opinion outside the period at issue to be considered, a claimant must demonstrate it relates to a claimant's functional limitations within the relevant period. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) ("In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status."); *Walton v. Astrue*, 773 F. Supp. 2d 742, 750 (N.D. Ohio 2011). Here, however, Claimant has failed to explain how the examination notes reflect any functional limitations present during the relevant period. (*See* ECF No. 10, PageID #: 658). Moreover, even if the opinion did relate back to the relevant period, Claimant's argument still fails for the same reasons discussed above: it included no additional functional limitations and made a disability finding reserved for the Commissioner. *See Zingale*, 2022 WL 824148 at *14; *see also Andrews,* 2021 WL 3375538 at *20; *see also Goode,* 2021 WL 5919939 at *18; § 404.1520c(c). Thus, the ALJ was not required to consider Mr. Strnad's June 2021 opinion.

The ALJ therefore did not err in disregarding the June 2021 record. Likewise, as their review of the November 2020 opinion complied with Social Security regulations, the Court sees no reason to disturb the decision.

### 2. RFC

Claimant finally argues that the ALJ recognized her obsessive compulsive disorder ("OCD") as a severe impairment but failed to account for it in the RFC. (ECF No. 10, PageID #: 659). Thus, she asserts that substantial evidence does not support the RFC, resulting in the improper finding that a substantial number of jobs exist in the national economy. (*Id.* at PageID

13

#: 655, 659). Claimant finally lists a number of conditions she claims the ALJ should have incorporated in the RFC. (*Id.* at PageID #: 659–60).[1]

The Commissioner argues that Claimant has failed to prove that substantial evidence does not support the ALJ's RFC. (ECF No. 11, PageID #: 682). The Commissioner asserts the ALJ properly considered all relevant medical and nonmedical evidence, concluding that Claimant was not disabled despite her OCD diagnosis. (*Id.* at PageID #: 678). The Commissioner further explains that where a severe impairment does not produce functional limitations, inclusion in the RFC is not necessary. (*Id.* at PageID #: 679–80). Further, the Commissioner notes that Claimant "has not shown that her [OCD] caused more limitations than noted in the ALJ's RFC nor has she explained what limitations she thinks the ALJ should have included in the RFC." (*Id.*).

Prior to determining that Claimant could not perform her past relevant work at Step Four, the ALJ determined Claimant's RFC. The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* § 416.945(a). Here, the ALJ determined Claimant's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant was limited to performing simple tasks and following simple instructions; no strict production quotas; no requirement for complex work-related decisions so no negotiation, no arbitration, no supervisory responsibilities, and no requirement of maintaining the safety or welfare of others; few if any workplace changes; could communicate with others, but no physical contact required for the job; and conversations could be superficial and brief.

---

[1] Claimant also argues that the ALJ improperly rejected greater restrictions because of Claimant's daily activities. (ECF No. 10, PageID #: 660–61). However, as discussed below, this was only one factor the ALJ considered, and it is not dispositive. As the ALJ looked at medical records, subjective allegations, and the opinion evidence, and this evidence supports the RFC, her argument is not well taken.

14

(ECF No. 8, PageID #: 46). When supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive—even if this Court might reach a different conclusion or if the evidence could have supported a different conclusion. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this Court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen*, 800 F.2d at 545.

As an initial matter, Claimant's argument that all severe impairments must be included in the RFC fails. The presence of a severe impairment alone does not automatically warrant an RFC limitation if it does not impact a claimant's ability to work. *Robinson v. Comm'r of Soc. Sec. Admin.*, No. 5:21-CV-01921-DAC, 2022 WL 4132886, at *11 (N.D. Ohio Aug. 6, 2022) (citing *Griffeth v. Comm'r of Soc. Sec.* 217 F. App'x 425, 429 (6th Cir. 2007) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.")). While Claimant cites a number of her mental health symptoms she wants incorporated into the RFC, these are patient-reported, subjective complaints, or related diagnoses, not functional limitations. (*See* ECF No. 10, PageID #: 659–60); *Thornton v. Saul*, No. 4:20-CV-01420-JRA, 2021 WL 3934332, at *11 (N.D. Ohio June 21, 2021) ("It is equally well settled that 'a diagnosis alone is not enough to establish specific functional limitations as a matter of right.'"), *report and recommendation adopted*, *Thornton v. Comm'r of Soc. Sec.*, No. 4:20CV1420, 2021 WL 4025192 (N.D. Ohio Sept. 2, 2021) (quoting *Teresa F. v. Saul*, No. 1:18-cv-01967-JRS-MPB, 2019 WL 2949910, at *5 n. 7 (S.D. Ind. July 9, 2019); *see also* Social Security Ruling 16–3p, 2016 WL 1119029, at *2 (2016) ("Under our regulations, an individual's

15

statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.")). As Claimant's cited symptoms present no additional restrictions on her ability to work, she fails to identify any new limitations for the RFC. Claimant's arguments, therefore, are misplaced.

Moreover, substantial evidence supports the RFC. The ALJ discussed Claimant's OCD throughout their analysis, including Claimant's subjective testimony of her OCD-related symptoms. (ECF No. 8, PageID #: 47). The ALJ ultimately found that Claimant's allegations of her symptoms were "not entirely consistent" with other evidence in the record. (*Id.*). The ALJ also reviewed the medical record and specifically noted Claimant's history of anxiety, depression, and OCD, referencing every medical record or exhibit Claimant cites in her argument. (*Id.* at PageID #: 47–48 (citing Ex. 3F), 49 (citing Exs. 7F, 12F), 50 (citing Ex. 9F), 51 (citing Ex. 11F)).

The ALJ then considered the opinions of state agency experts and found them persuasive. The ALJ summarized the limitations: "the claimant's concentration, persistence, and pace are adequate for 1-3 step instructions; would require minimal contact with others; and would require static job duties (2A and 4A). Dr. Tishler added no high production quotas (4A)." (*Id.* at PageID #: 50). The ALJ adopted these limitations, along with additional restrictions including "no requirement for complex work-related decisions," "no supervisory responsibilities," and "few if any workplace changes." (*Id.* at PageID #: 46).

Finally, Claimant neither suggests specific limitations the ALJ should have adopted to account for OCD nor explains why the ALJ's mental health restrictions are inadequate. Indeed, the ALJ adopted several mental health restrictions including "no requirement for complex work-related decisions," "few if any workplace changes," and "no physical contact required." (*Id.*). As these limitations account for OCD, and the ALJ included them in their hypothetical to the

16

vocational expert, Claimant's cursory argument that the ALJ failed to account for OCD in the administrative hearing also fails. (*See id.*, PageID #: 77–78 (hypothetical question); ECF No. 10, 659–61 (Claimant's argument citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239–41 (6th Cir. 2002))). This shows they considered all the evidence and accounted for OCD-related limitations.

Based on the ALJ's thorough review of the subjective and objective evidence, this Court finds that substantial evidence supports the RFC. Since the hypothetical matches the RFC, the resulting vocational expert testimony in response to the hypothetical constitutes substantial evidence that jobs exist in the national economy that Claimant can perform. *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments."); *Baker v. Barnhart*, 182 F. App'x 497, 500 (6th Cir. 2006) (same). Accordingly, the Court finds no reason to disturb the ALJ's decision.

**VI.  Conclusion**

Based on the foregoing, it the Court AFFIRMS the Commissioner of Social Security's non-disability finding and final decision denying Claimant Period of Disability and Disability Insurance Benefits.

**IT IS SO ORDERED.**

Dated: July 25, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE